IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil No. 5:17-cv-123

TIMOTHY GENE CONNOR,          )
                              )
    Plaintiff,              )
                              )
v.                            )
                              )          ORDER TO REMAND
NANCY A. BERRYHILL,           )
Acting Commissioner of Social )
Security,                     )
                              )
    Defendant.              )
                              )

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 10), and Memorandum in Support, (Doc. No. 11), and Defendant's Motion for Summary Judgment, (Doc. No. 15), and Memorandum in Support, (Doc. No. 16).

## I.    BACKGROUND

### A.    Procedural Background

Timothy Gene Connor ("Plaintiff") seeks judicial review of Defendant's denial of his social security claim. (Doc. No. 1). On or about January 30, 2014, Plaintiff filed an application for Title II and Title XVI benefits, alleging an inability to work due to disabling conditions beginning on December 1, 2009. (Doc. Nos. 9 to 9-1: Administrative Record ("Tr.") at 218, 222). Plaintiff's application was denied initially and upon reconsideration. (Tr. 149, 158).

On May 4, 2016, Plaintiff appeared and testified at a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 52–82). After the hearing, Plaintiff amended his onset date to February 13, 2013. (Tr. 249). The ALJ issued a decision on May 24, 2016, denying Plaintiff's claim. (Tr. 32–46). Plaintiff filed a request for review of the ALJ's decision on July 8, 2016, (Tr. 217), which was denied by the Appeals Council on May 18, 2017, (Tr. at 1–3). Therefore, ALJ's 2016 decision became the final decision of the Commissioner.

    B.    Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes[1] from February 13, 2013, Plaintiff's alleged amended onset date, through the date of the ALJ's decision, May 24, 2016. (Tr. 32). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability during the relevant time period. (Tr. 46).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a) (2012). The five steps are:

    (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
    (2) whether claimant has a severe medically determinable physical or

---

[1] Under the Social Security Act, 42 U.S.C. §§ 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether, considering claimant's RFC, age, education, and work experience, he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 45–46).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since February 13, 2013, the alleged disability onset date. (Tr. 34). At the second step, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease; degenerative joint disease; and obesity." (Tr. 34). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that [met] or medically equal[ed] one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1." (Tr. 38).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform "light work" with the following limitations:

> the claimant can frequently push and pull with his lower extremities frequently. The claimant can never climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have occasional exposure to workplace hazards, such as unprotected heights and dangerous machinery. The claimant requires a sit/stand option, alternating position approximately two times per hour without losing productivity.

(Tr. 39). In making his finding, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent

with the objective medical evidence and other evidence." (Id.). The ALJ further opined that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 44). Finally, at the fifth step, the ALJ determined that, after "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 45). Therefore, the ALJ concluded that Plaintiff was not "disabled" from February 13, 2013, Plaintiff's alleged amended onset date, through the date of the ALJ's decision, May 24, 2016. (Tr. 46).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). As the Social Security Act provides, if the Commissioner's findings as to any fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in

the medical evidence . . . .").  "Substantial evidence" has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345.  Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).  However, where "inadequacies in the ALJ's analysis frustrate meaningful review," remand is appropriate.  Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).

## III.   DISCUSSION

Plaintiff argues that the ALJ's decision warrants remand due to the ALJ's misplaced reliance on the testimony of the vocational expert ("VE") and inadequacies within the ALJ's RFC determination.  (Doc. No. 11).  Specifically, Plaintiff argues that the ALJ erred by not identifying and eliciting an explanation for the apparent conflicts between the VE's testimony and the DOT.  (Id.).  The Court finds that no apparent conflicts existed between the VE's testimony and the DOT.  Nevertheless,

Plaintiff also contends that the ALJ erred by failing to question the VE about what skills, if any, Plaintiff gained in his past work and whether those skills, if any, would be transferable to the jobs identified by the VE. On this matter, the Court agrees with Plaintiff and finds that the ALJ erred by not specifically identifying the skills Plaintiff obtained in his prior work and by failing to assess whether these skills (if any) would be transferable to the employment positions identified by the VE. Accordingly, remand is warranted because the record lacks substantial evidence demonstrating that Plaintiff's skills are transferable to the jobs proffered by the VE.[2]

A.    No Apparent Conflicts Exist Between the VE's testimony and the DOT.

Plaintiff's first two objections deal with the ALJ's duty to resolve apparent conflicts between a VE's testimony and the DOT. An ALJ "has an affirmative responsibility to ask [a VE] about any possible conflict between [his] evidence and . . . the DOT." Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). "First, the ALJ must '[a]sk the [VE] . . . if the evidence he or she has provided conflicts with information provided in the [DOT]'; and second, '[i]f the [VE]'s . . . evidence appears to conflict with the [DOT],'" the ALJ must then independently "obtain a reasonable explanation for the apparent conflict." Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) (citing SSR 00-4p, 2000 WL 1898704, at *1, *4 (Dec. 4, 2000)). An ALJ has not fulfilled her responsibility to resolve conflicts merely because a VE responds "yes" when asked if his testimony is consistent with

---

[2] Because the Court finds that Plaintiff's first argument warrants remand, the Court need not reach Plaintiff's second argument alleging inadequacies within the ALJ's RFC determination.

the DOT.  Id. at 209.  The conflicts the ALJ must identify are those that are "apparent," which occur when "the [VE's] testimony seems to, but does not necessarily, conflict with the" DOT.  Id.

1.  Obesity

Plaintiff first argues that an apparent conflict exists due to Plaintiff's "superobesity." (Doc. No. 11 at 8–9).  Plaintiff asserts that, due to his weight, Plaintiff would require a bariatric chair, which the VE explained amounted to an accommodation.  (Id. at 8).  The VE testified that, in his experience, some employers have issues when it comes to providing accommodations.  (Tr. 80–81).  The same argument was posited in Straite v. Berryhill, where the plaintiff argued that, "because the ALJ included a sit/stand option in her RFC, the ALJ implicitly took the possibility of 'reasonable accommodation' into account in his disability determination, which is improper under SSR 00-1c."  No. 3:16-CV-00006-FDW, 2017 U.S. Dist. LEXIS 147942, at *13 (W.D.N.C. Sept. 13, 2017).  "Plaintiff argues, therefore, that this sit/stand option necessitates a finding of 'disabled.'"  Id.  The Court in Straite found Plaintiff's accommodations argument "specious" and it remains so.  Id.

> Consistent with the Supreme Court's ruling in Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), SSR 00-1c merely underscores that a person who files for disability under the Social Security Act is not precluded from also pursuing relief under the Americans with Disabilities Act.  It does not state that anyone who requires an accommodation is disabled.

Id.

2. Sit/stand

Next, Plaintiff argues that an apparent conflict exists between the RFC's sit/stand limitation and the identified jobs of administrative clerk, office helper, and electronics assembler, developmental. (Doc. No. 11 at 9–12). In the RFC, the ALJ limited Plaintiff to sit/stand option "alternating position approximately two times per hour without losing productivity." (Tr. 39). Plaintiff argues that, "while the ALJ said [Plaintiff] must be able to alternate positions two times per hour the duration of these position changes are at will, i.e. [Plaintiff] may sit for as long as he wants/needs and stand for as long as he is able/wants." (Doc. No. 11 at 10). To Plaintiff, this translates to the conclusion that Plaintiff's proposed jobs do not allow him to sit or stand for as long as he wanted or needed while carrying out his duties. (Id.).

Defendant is quick to point out that the DOT itself does not address sit/stand requirements of jobs. (Doc. No. 16 at 11). Defendant also notes that the VE explained why the proposed jobs coincide with a sit/stand option. During the hearing, the ALJ asked the VE if the solicited testimony conflicted with the DOT. (Tr. 79). The VE responded,

> [I]t has been except I would point out the DOT does not address this sit, stand change of position in the first hypothetical or the second hypothetical. I was basing my response to that and the jobs I identified on my years of evaluating and counseling individuals with all kinds of disabilities, helping them adjust as best they can, and assisting them in accessing the jobs that I identified. That is I based my response on my clinical experience at that part of the question about the sit, stand change of position.

(Tr. 79–80). In her decision, the ALJ recognized her reliance on the VE's expertise and knowledge when it came to the sit/stand option:

> The vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, however, there are parameters not specifically addressed by the DOT. The vocational expert testified that the Dictionary of Occupational Titles does not address sit/stand options, off task time and absences. The vocational expert testified that he based his testimony on his clinical experience.

(Tr. 45). The Court finds the ALJ's reliance on the VE's testimony sufficient and proper in light of the DOT's silence on the subject of a sit/stand option. "[I]f the DOT is silent, an ALJ has greater leeway to rely on the experience and testimony of a VE." Gordon v. Berryhill, No. 3:16-cv-130, 2017 U.S. Dist. LEXIS 195089, at *12 (W.D.N.C. Nov. 28, 2017); see also Corvin v. Berryhill, No. 5:17-cv-92-RJC-DSC, 2018 U.S. Dist. LEXIS 132770, at *13-14 (W.D.N.C. Aug. 7, 2018) ("because the DOT is silent as to a sit/stand option, there is no conflict between the VE's testimony and the DOT and the error is therefore harmless . . . .") (quoting Williams v. Colvin, No. 5:15-CV-60-RJ, 2016 U.S. Dist. LEXIS 42363, 2016 WL 1276415, at *5 (E.D.N.C. Mar. 30, 2016)). Because no apparent conflict exists between the DOT's description and the sit/stand option, the ALJ's findings were consistent with Pearson.

B.    The record does not contain substantial evidence that Plaintiff has transferable skills to the job positions proffered by the VE.

Next, Plaintiff argues that the ALJ erred by suggesting that Plaintiff can perform skilled jobs without questioning the VE about what transferable skills Plaintiff obtained from his past relevant work. Plaintiff points out that the DOT entry for office clerk and electronic assembler, developmental have SVPs of 4 and 7 respectively.[3] (Doc. No. 11 at 12). Plaintiff also states that the ALJ failed to ask the

_____

[3] Plaintiff also notes that, under the Occupational Outlook Handbook, which Defendant has taken administrative notice of under 20 C.F.R. §§ 404.1566(d)(5),

VE during the hearing whether Plaintiff acquired any skills in his past relevant work and if those skills were transferable to the identified jobs. (Id.). In response, Defendant cites the Commissioner's regulations regarding transferability:

> We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
> . . .
> Transferability is most probable and meaningful among jobs in which—
> (i) The same or a lesser degree of skill is required;
> (ii) The same or similar tools and machines are used; and
> (iii) The same or similar raw materials, products, processes, or services are involved.

20 C.F.R. §§ 404.1568(d)(1)-(2); (Doc. No. 16 at 12). Defendant asserts that because Plaintiff previously performed skilled work as a Pizza Hut restaurant manager, which has an SVP of 7, Defendant would necessarily have transferrable skills to jobs that are semiskilled with lower SVPs. This might be true; however, as the language of the regulation demonstrates, transferability of skills to jobs of the same or lower skill levels is not automatic. Rather, transferability *depends* on various factors, and ALJs have a duty to inquire about and consider these factors before

_____

416.966(d)(5), the job of electronics assembler, developmental typically requires an associate's degree. (Doc. No. 11 Attach. 4). Because Plaintiff only has a high school degree, he is arguably unqualified for the job of electronics assembler. (Tr. 57, 256). While the Court notes that the ALJ should have identified and questioned the VE regarding this apparent conflict under <u>Pearson</u>, the Court deems the error harmless. That is because, even without considering the position of electronics assembler, developmental, the VE correctly identified 235,000 other employment opportunities that Plaintiff could perform as either a general office clerk (125,000 jobs available in the United States) or as an office helper (110,000 jobs available in the United States). (Tr. 45).

concluding that plaintiffs' skills are transferable.  See 20 C.F.R. §§ 404.1568(d)(1)-(2) (emphasis added).  Specifically, ALJs should inquire about skills plaintiffs gained from past work experiences and assess whether these skills would be transferrable to new jobs identified by VEs as potential employment options.

Upon reviewing the hearing testimony and the ALJ's opinion in the current case, the Court agrees with Plaintiff and finds that the ALJ erred in her transferability assessment and discussion.  "When an ALJ makes a finding that a claimant has transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable."  Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001) (citing Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988)).  In Pyles, the plaintiff previously worked as a thrift shop manager, which the VE characterized as skilled work based on the DOT description of plaintiff's prior job—not on any specific duties the plaintiff had performed in that position.  Pyles at 848.  The Fourth Circuit found that, because there was no evidence in the record detailing specific skills the plaintiff had obtained in her prior position that would be transferable to the new potential employment position suggested by the VE, it was improper for the ALJ to assume that the plaintiff possessed transferable skills:  "The mere characterization of her position as managerial cannot suffice to show that she had acquired skills transferable to the position of gift shop manager.  The Secretary must show that specific skills actually acquired in the former are transferable to the latter."

Similar to the ALJ in <u>Pyles</u>, the ALJ in the present case did not make specific findings about what skills Plaintiff acquired as a Pizza Hut restaurant manager. Nor did the ALJ take testimony from the VE regarding the transferability of Plaintiff's skills (whatever these skills might be). Moreover, the ALJ's opinion is devoid of any explanation of her rationale concerning the transferability of Plaintiff's skills to employment positions proffered by the VE. Therefore, it would be improper for this Court to assume that Plaintiff acquired skills in his position as a Pizza Hut manager that would necessarily transfer to a position as an administrative clerk, electronics assembler, developmental, or office helper absent substantial evidence in the record documenting the transferability of Plaintiff's skills. While Defendant's assertion that Plaintiff possesses skills that would transfer to these jobs might be true, the ALJ failed to verify—moreover, even question—whether Plaintiff does indeed possess transferable skills. Therefore, the record lacks substantial evidence detailing Plaintiff's relevant skills and their transferability, which frustrates the Court's ability to conduct a "meaningful review" of Plaintiff's case. <u>Mascio v. Colvin</u>, 780 F.3d 632, 636 (4th Cir. 2015) (noting that remand may be appropriate "where . . . inadequacies in the ALJ's analysis frustrate meaningful review" (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam))).

IV.     CONCLUSION

Because this Court concludes that the record lacks substantial evidence identifying skills Plaintiff gained from his prior employment and detailing the transferability of those skills, the Court finds it necessary to **VACATE** the ALJ's

decision and **REMAND** this matter pursuant to Sentence Four of 42 U.S.C. § 405(g) for further consideration in accordance with this Order.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 10), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 15), is **DENIED**; and

3. The Clerk of Court is directed to close this case.

Signed: September 17, 2018

Robert J. Conrad, Jr.
United States District Judge